**Affirmed and Opinion filed February 4, 2014.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-12-01037-CR

---

### GERARD JAY TOLLETT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 12
Harris County, Texas
Trial Court Cause No. 1813847**

---

## O P I N I O N

In five issues, appellant challenges his conviction of driving while intoxicated. We affirm.

### I. BACKGROUND

During the late evening of March 4, 2012, Gabriel Hernandez, a police officer with the Nassau Bay Police Department, was off-duty and driving his personal vehicle in Webster, a city adjacent to Nassau Bay. At the same time,

Glen Sharp, also a police officer with the Nassau Bay Police Department, was driving his patrol car at a different location and speaking with Officer Hernandez via cellular phone. Officer Hernandez planned to meet Officer Sharp at a restaurant parking lot in order to hand him some paperwork.

While the men spoke on the phone, Officer Hernandez observed someone later identified as appellant drive a truck out of a parking lot onto a curb and then nearly run into another vehicle. Officer Hernandez advised Officer Sharp that the driver of the truck might be intoxicated. Officer Hernandez continued following appellant and observed him briefly drive on the wrong side of the road. Additionally, Officer Hernandez saw appellant enter another parking lot, appear to intend to stop his truck, but then exit the parking lot, again striking a curb as he entered the roadway.

Eventually, Officer Sharp arrived at Officer Hernandez's and appellant's location. Officer Sharp pulled behind appellant's truck and activated his patrol car's emergency lights. At this point, Officer Hernandez stopped following the truck and was not further involved in the incident. On cross-examination, Officer Hernandez initially testified that he filed a report regarding the incident four days after it occurred, but when shown his actual report, admitted he filed it seven days after the incident.

Officer Sharp testified that, after he pulled behind appellant's truck and activated his emergency lights, appellant continued to drive for approximately forty seconds before pulling into the driveway of his house. Officer Sharp testified he did not observe appellant violate any traffic rules during this period. Once appellant parked in his driveway, he remotely opened his garage door and exited the truck. Officer Sharp testified that it is unusual for a person who has been pulled over to exit his vehicle. Officer Sharp asked appellant several times if he

2

would perform field sobriety tests, but appellant refused. Officer Sharp testified appellant staggered, repeatedly asked to call his daughter, had a strong odor of alcohol, and slurred his speech. Officer Sharp also noticed an open wound on appellant's arm, which was bleeding though his shirt; appellant indicated that he had a "staph infection." Officer Sharp determined appellant was intoxicated and transferred him to the police station.

Officer Sharp's patrol car had a video camera which recorded him stopping and questioning appellant. The video is strong evidence of appellant's intoxication because it shows the following events:

- Appellant exited his vehicle in his driveway and immediately asked about calling his daughter, a request he repeated several times. Officers had to twice order appellant to refrain from making a phone call.

- Appellant's interaction with the officers, particularly his manner of speech, indicated that he was intoxicated. Appellant appears to have had difficulty standing and moving normally, and eventually sat on his truck bumper without being asked to do so. He moved very close to Officer Sharp on two occasions, necessitating Officer Sharp to order appellant to "back up." Appellant also childishly accused Officer Sharp of being "mean" and "not nice."

- Appellant refused to participate in field sobriety tests and repeatedly stated that he was at his house, apparently implying that he should not be subject to police interference because he was at his own house.

- Appellant denied having consumed any alcohol but abrasively stated at one point, "I've been drinking, so what?"

- When Officer Sharp handcuffed appellant, he had to forcibly remove the phone from appellant's hand. Appellant also grabbed and held onto Officer Sharp's hand.

- Appellant made several threatening statements, saying he knows police chiefs and works for the mayor.

3

- While officers adjusted appellant's handcuffs and his face was pointed toward the camera, he made several bizarre facial expressions and seemed to talk to himself.

At the police station, appellant refused to give a breath or blood sample. An EMT treated appellant's staph infection by covering the wound with gauze. Officer Sharp testified that appellant removed the gauze. The EMT testified appellant denied having used drugs or alcohol and was cooperative except for refusing to sign a form. The EMT also gave appellant a "15" on the "Glasgow coma scale," which is the highest score a person may receive relative to being alert and oriented.

The State charged appellant with misdemeanor driving while intoxicated for operating a motor vehicle in a public place while intoxicated, meaning he did not have the normal use of his mental or physical faculties by reason of introduction of alcohol into his body. *See* Tex. Penal Code Ann. §§ 49.01(2) (West 2011), 49.04(a) (West Supp. 2013). A jury convicted appellant and assessed punishment at 180 days in county jail and a $4,000 fine.[1]

## II. EVIDENTIARY ISSUES

In his first through fourth issues, appellant contends the trial court made several erroneous evidentiary rulings.

## A. Standard of Review

We review a trial court's evidentiary ruling for an abuse of discretion. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb the ruling if it is within the zone of reasonable disagreement. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Instead, we will uphold the

---

[1] Appellant pleaded true to an enhancement paragraph pertaining to a prior DWI conviction.

ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

If we determine the trial court's evidentiary ruling was nonconstitutional error, we review the ruling for harm under Texas Rule of Appellate Procedure 44.2(b), disregarding error that does not affect a criminal defendant's "substantial rights." Tex. R. App. P. 44.2(b). We may not reverse if, after examining the record as a whole, we have a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict or had but a slight effect. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Stated differently, if we have "a grave doubt" that the result was free from the substantial influence of the error, we must treat the error accordingly. *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002) (citation omitted). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 637–38 (citation omitted).

In assessing the likelihood that a jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider statements made during voir dire, jury instructions, the State's theory, any defensive theories, closing argument, and whether the State emphasized the error. *Id.* at 355–56.

**B. Texas Rule of Evidence 608**

In his first and second issues, appellant contends the trial court erred by refusing to allow him to impeach Officer Hernandez with a specific act of dishonesty and opinion/reputation evidence. These issues are governed by Texas Rule of Evidence 608:

> **(a) Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> (1) the evidence may refer only to character for truthfulness or untruthfulness; and
>
> (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Tex. R. Evid. 608(b).

### 1. Rule 608(b): specific instances of conduct

In his first issue, appellant contends the trial court erred by precluding him from cross-examining Officer Hernandez regarding his 2006 termination from the Dickinson Police Department. A bill of exceptions revealed the department terminated Officer Hernandez because he failed to file a mandatory "use of force" form after his gun accidentally discharged during an incident and then intentionally withheld information about this accidental discharge when testifying during a trial. The bill of exceptions also included a termination letter from the department indicating that Officer Hernandez was terminated for the following reason:

> Despite direct questioning on the topic, you intentionally withheld information regarding the fact that your weapon discharged during the traffic stop of [the defendant in that case.] You later recanted this sworn testimony, admitting that your weapon had accidentally discharged during the stop. This activity is in violation of Department policy and procedures as listed below: [listing several sections.]

Officer Hernandez was not charged with perjury for falsely testifying.

The State objected to admission of this evidence, citing Texas Rules of Evidence 608(b), 609, and 404(b). Appellant responded that he was allowed to present this evidence pursuant to the Confrontation Clause of the Sixth Amendment, which affords him the right to cross-examine witnesses against him. U.S. Const. Amend. VI; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985). The trial court sustained the State's objection.

In support of his argument, appellant cites caselaw providing that evidence prohibited by Rule 608 must nonetheless sometimes be admitted pursuant to the Confrontation Clause. *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000) ("[T]he Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude.").[2] Generally, the right to present evidence and to cross-examine witnesses under the Confrontation Clause does not conflict with the corresponding rights under state evidentiary rules. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). The Confrontation Clause does not confer a right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. *Id.* at 562. In determining whether the Confrontation Clause requires admission of otherwise

---

[2] Appellant also cites authority indicating that evidence of specific instances of conduct is admissible to show bias or motive. *See* Tex. R. Evid. 613(b); *Davis v. Alaska*, 415 U.S. 308, 320 (1974); *Billodeau v. State*, 277 S.W.3d 34, 43 (Tex. Crim. App. 2009). However, appellant does not explain, and we conceive of no reason, why the excluded evidence supports a finding Officer Hernandez had a motive or bias to falsely testify that appellant drove erratically.

inadmissible evidence, we must balance the probative value of the evidence against the risk its admission entailed. *Lopez*, 18 S.W.3d at 225. Moreover, despite a defendant's constitutional right to cross-examine witnesses, the trial court retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other matters, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010).

Appellant argues that, because Officer Sharp testified he did not see appellant commit any traffic infractions, Officer Sharp's traffic stop of appellant was based solely on Officer Hernandez's observations of appellant's driving. Thus, according to appellant, all evidence supporting a finding that Officer Sharp had reasonable suspicion[3] for stopping appellant hinged on Officer Hernandez's credibility. Appellant contends Officer Hernandez's credibility was called into question when, during cross-examination, he looked at his police report pertaining to the underlying incident and admitted he filed it seven days after the incident, contrary to three days he stated earlier on cross-examination.[4]

We disagree that the trial court denied appellant his constitutional right to cross-examine Officer Hernandez regarding his 2006 termination. First, we reject appellant's contention that such cross-examination was constitutionally required.

---

[3] Appellant argues the officers lacked reasonable suspicion and probable cause for stopping him. For simplicity and because the differences between reasonable suspicion and probable cause are not material to our analysis, we will dispose of appellant's issues by considering the officers' reasonable suspicion to detain him.

[4] Appellant also apparently argues the State, at least at one point, believed Officer Hernandez's 2006 termination was relevant, admissible evidence because the State originally disclosed this evidence to appellant in a *Brady* filing. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding prosecutor has affirmative duty to disclose material exculpatory evidence). However, appellant does not cite any authority supporting the proposition that the State's *Brady* disclosure rendered the evidence admissible at trial.

Evidence that, during a hearing six years ago, Officer Hernandez intentionally withheld testimony about his failing to report a weapon discharge would not have achieved appellant's specific goal of proving Officer Hernandez lied about appellant's reckless driving. Officer Hernandez's decision to withhold this information has nothing in common with whether he fabricated his testimony that appellant drove recklessly. *See Lopez*, 18 S.W.3d at 225–26 (concluding Confrontation Clause did not trump Rule 608 and require admission of evidence that complainant previously falsely accused his mother of physical abuse, in part because physical abuse had "almost nothing in common" with complainant's allegation of sexual abuse against defendant). Appellant's purpose for presenting this evidence was general character assassination, which Rule 608(b) prohibits. *See Hammer*, 296 S.W.3d at 563 ("Our state evidentiary rules frown on unnecessary character assassination.").[5] Moreover, appellant's reliance on Rule 611(b)—providing, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility"—does not support his position because Rule 608(b)'s prohibition against attacking credibility by specific instances of conduct is a limitation of Rule 611(b). *See* Tex. R. Evid. 611(b); *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000) (explaining Rule 608(b) limits credibility evidence admissible under Rule 611(b)).

Second, we reject appellant's contention that cross-examining Officer Hernandez about his termination was necessary because such evidence was

---

[5] As the *Hammer* court explained,

> For example, the defense may not ask the witness: Didn't you cheat on your income tax last year? Didn't you lie on Tuesday about having an affair with your boss? Didn't you steal five dollars from the church collection plate last week and then lie to the priest about it? While all of those questions attack the witness's general character for truthfulness, that mode of impeachment is specifically barred by Rule 608(b).

*Hammer*, 296 S.W.3d at 563.

9

relevant to whether Officer Sharp had reasonable suspicion to stop appellant. An investigative detention requires a police officer to have at least a reasonable suspicion of criminal activity. *See Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). An officer has reasonable suspicion permitting him legally to initiate a traffic stop if he has a reasonable basis for suspecting a person has committed a traffic offense. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). As we discuss more in depth below, if there had been a genuine dispute of material fact essential to deciding whether appellant's detention was lawful—meaning evidence obtained as a result of the detention was inadmissible—the trial court would have been required to submit an article 38.23(a) instruction asking the jury to resolve the fact issue. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

Contrary to appellant's position, his traffic stop did not involve the situation in which police officers made the stop based on information supplied by a lay informant, necessitating evidence of the informant's reliability. *See LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[I]nformation provided to police from an identifiable citizen-informant, who may be held to account for the accuracy and veracity of the report, may be regarded as reliable."). Officer Sharp stopped appellant as part of a coordinated police effort involving Officer Hernandez. "[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citations omitted); *see also Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987) ("Viewing the collective knowledge of the police officers involved in the

investigation and surveillance of the appellant, we find that the officers had a reasonable suspicion that a crime had been committed, which would have justified a brief investigatory detention."). Moreover, the fact that Officer Hernandez was off-duty when he first observed appellant does not mean he was a lay informant instead of a cooperating officer. *See Polk v. State*, 337 S.W.3d 286, 288 (Tex. App.—Eastland 2010, pet. ref'd) (determining that, when off-duty police officer observes and responds to crime, he is then on-duty).

During an offer of proof, Officer Sharp testified that he worked for the Dickinson Police Department around the same time as Officer Hernandez but left the department before Officer Hernandez was terminated. Officer Sharp further testified he does not know why Officer Hernandez was terminated except that it involved a gun being fired. Accordingly, assuming without deciding that Officer Sharp's knowledge of the reason for Officer Hernandez's prior termination would raise a fact issue necessitating an article 38.28(a) instruction, no such evidence exists. We overrule appellant's first issue.[6]

## 2. Rule 608(a): opinion and reputation testimony

In his second issue, appellant contends the trial court violated Rule 608(a) and the Confrontation Clause by precluding him from questioning Ron Morales— who was Officer Hernandez's former police chief at the Dickinson Police

---

[6] Appellant argues the trial court acted hypocritically because, despite excluding Officer Hernandez's specific act of dishonesty, the court allowed the State during the punishment phase to question appellant regarding a 2006 television news story concerning appellant drinking alcohol during work hours. However, article 37.07, section 3(a) of the Code of Criminal Procedure provides that, during punishment, evidence as to any matter the trial court finds relevant to sentencing may be offered, including "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2013); *see also Haley v. State*, 173 S.W.3d 510, 514–15 (Tex. Crim. App. 2005) (explaining purpose and meaning of article 37.07, section 3(a)).

11

Department—about Officer Hernandez's reputation for truthfulness.[7] In an offer of proof, Chief Morales testified that his opinion of Officer Hernandez's character for truthfulness was "bad," based solely on Officer Hernandez's dishonesty during the trial in 2006.

As noted above, "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but . . . the evidence may refer only to character for truthfulness or untruthfulness." Tex. R. Evid. 608(a). Assuming without deciding that the trial court violated the Texas Rules of Evidence by excluding Chief Morales's opinion/reputation testimony about Officer Hernandez's character for truthfulness, we hold such nonconstitutional error was harmless. As already discussed, such evidence would not have entitled appellant to an article 38.23(a) instruction regarding the legality of his detention because there was no evidence Officer Sharp was aware Officer Hernandez's character for truthfulness was "bad." Moreover, because the video strongly supports a finding that appellant was intoxicated, the absence of Chief Morales's opinion/reputation testimony did not have a substantial and injurious effect in determining the jury's verdict. *See* Tex. R. App. P. 44.2(b); *Casey*, 215 S.W.3d at 885.

Further, even if the trial court's exclusion of Chief Morales's opinion/reputation testimony were constitutional error under the Confrontation Clause, such error was harmless. Constitutional error requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). The presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error under Rule 44.2(a). *Motilla v. State*, 78 S.W.3d 352,

_____

[7] Appellant also appears to raise this argument in his first issue. For simplicity, we address all of appellant's contentions involving Chief Morales's testimony in our analysis of appellant's second issue.

12

357 (Tex. Crim. App. 2002). An analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether, beyond a reasonable doubt, the error did not contribute to the conviction or punishment. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

We hold beyond a reasonable doubt that any constitutional error did not contribute to appellant's conviction. Even if Officer Morales's opinion/reputation testimony would have caused the jury to question Officer Hernandez's credibility, the police video is overwhelming evidence supporting a finding that appellant was intoxicated. We overrule appellant's second issue.[8]

## C. EMT's Medical Report

In his third issue, appellant contends the trial court erred by excluding the EMT's medical report regarding his treatment of appellant at the police station. We hold that, because the EMT testified about the substance of the excluded report (specifically, that he gave appellant a perfect score on the Glasgow coma scale, appellant denied having consumed alcohol, and appellant was cooperative), any error stemming from the trial court's exclusion of the report was rendered harmless. *See Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.) ("Any error in excluding evidence is harmless if the same evidence is subsequently admitted without objection."). Thus, we overrule appellant's third issue.

---

[8] We also reject appellant's contention that our holding harmless the trial court's exclusion of Chief Morales's opinion/reputation testimony will encourage the State to seek exclusion of relevant opinion/reputation testimony in future cases. Our holding is based on the unique facts of this case, and we are confident trial courts in the future will base their evidentiary rulings on the facts of their respective cases and not solely on this opinion.

## D. Appellant's Voice Exemplar

In his fourth issue, appellant contends the trial court erred by refusing to allow appellant to provide a voice exemplar to the jury without waiving his constitutional right not to testify. Officer Sharp testified that he believed appellant was intoxicated in part because appellant slurred his speech. Appellant wanted to provide the exemplar to show that he always slurred his speech. Appellant argued the exemplar was admissible under Texas Rule of Evidence 105. *See* Tex. R. Evid. 105 (governing admission of evidence for limited purpose). The trial court sustained the State's objection, explaining appellant could easily manipulate his voice to sound slurred.

At trial, appellant did not argue that the trial court's refusal to allow the exemplar was constitutional error. Thus, he has waived this contention. *See Linney v. State*, 401 S.W.3d 764, 772–73 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (providing defendant preserves constitutional error by making timely, specific objection). Additionally, even if the trial court committed nonconstitutional error by disallowing the exemplar, such error was harmless because the video provided strong evidence that appellant was intoxicated aside from his slurred speech. *See* Tex. R. App. P. 44.2(b). We overrule appellant's fourth issue and have disposed of all his issues regarding the trial court's evidentiary rulings.

## III. JURY CHARGE

In his fifth and final issue, appellant contends the trial court erred by refusing to include an article 38.23(a) instruction in the jury charge. When we review a claim of jury charge error, we first determine whether there is error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

As discussed above, article 38.23(a) provides that no evidence obtained by an officer or other person in violation of the laws or constitutions of Texas or the United States shall be admitted in evidence against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a). When there is an issue regarding whether evidence was obtained via a legal or constitutional violation, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained by such a violation, then it shall disregard any such evidence. *Id.* An article 38.23(a) instruction must be given in any case in which the defense raises a factual dispute about the legality of how the evidence was obtained. *See Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). A defendant must meet three requirements before he is entitled to a jury instruction under article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To raise a disputed fact warranting an article 38.23(a) instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id.* at 513. A fact issue about whether evidence was legally obtained may be raised from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable. *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).

Appellant argues he was entitled to an article 38.23(a) instruction because Officer Hernandez testified he saw appellant commit numerous traffic violations whereas Officer Sharp testified he did not observe appellant commit any traffic violations. According to appellant, this testimonial disparity affirmatively raised an issue of historical fact regarding whether he actually drove erratically—

15

meaning Officer Hernandez lied about appellant's erratic driving—which was the basis for the officers' reasonable suspicion to stop him. *See Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012) (explaining article 38.23(a) instruction necessary when there is dispute whether police officer lied about historical fact upon which reasonable suspicion hinged).

We conclude Officer Sharp's testimony that he did not observe appellant commit any traffic violations is not *affirmative* evidence that Officer Hernandez lied about appellant committing traffic violations prior to the time Officer Sharp arrived. *See Madden*, 242 S.W.3d at 513–14 ("There must be some affirmative evidence of 'did not speed' in the record before there is a disputed fact issue" on whether officer had probable cause to stop defendant for speeding). Officer Hernandez testified he observed appellant commit infractions by driving onto curbs and almost striking other vehicles as he exited parking lots and also by driving on the wrong side of the road for "a short distance." Officer Sharp was not present at that time. Officer Sharp testified that, after he arrived at appellant's location, he followed appellant for approximately forty seconds but did not observe him commit any traffic violations. Officer Sharp agreed appellant "drove normally into the neighborhood" even with a "blinding" police spotlight reflecting in his mirrors. Nevertheless, unlike Officer Hernandez, Officer Sharp did not observe appellant exit a parking lot. Officer Sharp also testified that, after activating his emergency lights, appellant failed to stop immediately but continued to his house, where he parked in the driveway and opened his garage door. This testimony is corroborated by the video, which reflects appellant had an opportunity to turn right onto another street and stop his car but instead drove for almost forty seconds to his house where he opened his garage and exited the truck.

16

Accordingly, Officer Sharp's testimony did not raise a fact issue regarding whether appellant had earlier driven onto curbs as he exited parking lots—the major fact supporting reasonable suspicion to stop appellant. *See Stone v. State*, 703 S.W.2d 652, 653 (Tex. Crim. App. 1986) (concluding fact issue raised regarding officer's right to stop defendant's vehicle because officer testified defendant drove recklessly but defendant and her passenger testified defendant drove prudently). We hold the trial court did not err by denying appellant's request for an article 38.23(a) instruction. We overrule appellant's fifth issue.

We affirm the trial court's judgment.


/s/     John Donovan
        Justice


Panel consists of Justices Christopher, Brown, and Donovan.
Publish — Tex. R. App. P. 47.2(b).