**Affirmed and Memorandum Opinion filed July 26, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00172-CR

## ROMEL GAITAN, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1415869**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Romel Gaitan, Jr. of possession with intent to deliver a controlled substance. His principal defense at trial was that the evidence against him was illegally obtained. The charge included multiple paragraphs instructing the jury, under article 38.23(a) of the Code of Criminal Procedure, to disregard any evidence it found was illegally obtained. Appellant contends the trial court erred by failing to include an additional instruction regarding whether a police

officer searched appellant's bedroom and found a safe before obtaining consent to search. We conclude this contested fact was covered by the instructions given and therefore affirm.

## BACKGROUND

Appellant and his grandmother, Martha Gaitan, lived together in Mrs. Gaitan's house. On January 28, 2014, after returning from work, Mrs. Gaitan encountered appellant at the house acting erratically. Appellant's behavior frightened Mrs. Gaitan. Appellant was yelling at Mrs. Gaitan and threw his arms in the air and ran around the living room. Appellant also destroyed some property in the living room and kitchen. Mrs. Gaitan called 9-1-1 to have paramedics come to her house and attend to appellant.

The 9-1-1 call transcript shows the operator reported "the susp[ect]" had threatened to kill Mrs. Gaitan. This information was relayed to emergency services. Paramedics were the first to arrive at the house, where they found Mrs. Gaitan waiting outside.

Houston Police Department Officer Mark Medina arrived shortly thereafter and entered the house to locate the "suspect," who reportedly had threatened to kill Mrs. Gaitan. There was conflicting testimony regarding whether Medina spoke to Mrs. Gaitan before entering the house. To "make the scene safe," Medina detained appellant and placed him in the back of Medina's patrol car.

The witnesses at trial disagreed regarding whether Officer Medina searched appellant's bedroom and located a safe before obtaining consent from Mrs. Gaitan to search the house. According to appellant and Mrs. Gaitan, Medina asked them for the combination to a safe located in appellant's bedroom after Medina detained appellant. Appellant testified that he had closed the door to his room and closed the

2

safe, which he always kept locked. According to appellant, Medina attempted to obtain the combination of the safe from him while he was in the back of the patrol car. Mrs. Gaitan testified that Medina asked her several times for the combination to the safe located in appellant's room. She told Medina she was unaware of any safe in appellant's room or the combination to such safe. Being unable to secure the combination, Medina sought and obtained written consent to search the home from Mrs. Gaitan.

Officer Medina testified to a different sequence of events. After securing appellant in his patrol car, he approached Mrs. Gaitan at her front door to ascertain what had occurred. He stated that he asked Mrs. Gaitan if he could retrieve a shirt for appellant because it was cold outside and appellant was wet. According to Medina, Mrs. Gaitan acquiesced and instructed Medina where to find appellant's bedroom. Medina testified that when he approached the room, the door was open and he could clearly see in. Medina further testified that from his vantage point outside the room, he could ascertain the room contained a "heavy presence of narcotics." Medina then left the house and obtained written consent to search the house from Mrs. Gaitan.

Officer Medina and Mrs. Gaitan agreed that she signed a Voluntary Consent for Search and Seizure Form for her house. After obtaining consent, Medina radioed for officers of the tactical team to assist him in the search. Medina directed the other officers to what he believed to be the narcotics in the room. The tactical team found and catalogued narcotics on shelves, on the bed, and within an open and unlocked safe found in appellant's closet.

At trial, appellant disputed the validity of Medina's search and asked the trial court to exclude evidence obtained from the search. The trial court denied appellant's motion to suppress. The jury charge included language from article

3

38.23(a) of the Code of Criminal Procedure, as well as several application paragraphs. The first set of application instructions provided that the jury was to disregard evidence found during "any search of [appellant's] bedroom without a search warrant or without Martha Gaitan's consent" because such a search would be unlawful. The instructions also stated: "if you believe that Martha Gaitan did not freely and voluntarily give consent to search [appellant's] bedroom, . . . then the search would be unlawful . . . ." The second set of instructions provided that "any search of [appellant's] safe in his bedroom would be illegal if the safe had to be unlocked by the police officers before the police officers were able to search the inside of the safe."

Appellant objected to the jury charge, "ask[ing] to be included in the charge the fact issue as to whether or not Officer Medina searched [appellant's] bedroom and found the safe and the drugs in the safe prior to getting the consent to search." The court overruled this objection.

The jury unanimously found appellant guilty of possession with intent to deliver a controlled substance. Appellant was sentenced to serve 25 years in prison and assessed a $100,000 fine.

## ANALYSIS

In a single issue, appellant contends the trial court erred in refusing his request for an additional application instruction under article 38.23 because there was a factual dispute regarding whether Medina searched appellant's bedroom and safe before obtaining consent from Mrs. Gaitan. We conclude there is no error because the factual dispute is narrower than appellant contends and the instructions given allowed the jury to resolve that dispute.

## I.      Standard of review and applicable law

We conduct a two-step analysis of a complaint of charge error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The court must first determine whether there is error in the charge. *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Tollett v. State*, 422 S.W.3d 886, 896 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). If error is found, then the court will analyze that error for harm. *Ngo*, 175 S.W.3d at 743. "Error preservation does not become an issue until harm is assessed." *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If the appellant did not preserve the error, then the court will examine the record for egregious harm. *Barrios*, 283 S.W.3d at 350. If the error was properly preserved, the court must assess whether "some harm" occurred. *Elizondo v. State*, 487 S.W.3d 185, 205 (Tex. Crim. App. 2016).

Article 38.23(a) of the Texas Code of Criminal Procedure provides that no evidence obtained by an officer in violation of the Constitutions or laws of Texas or the United States shall be admitted in evidence against the accused in the trial of any criminal case. Tex. Code Crim. Proc. Ann. 38.23(a) (West 2005). The statute further provides that "in any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *Id.*

A defendant is entitled to this instruction if (1) the evidence presented to the jury raises an issue of fact; (2) the defendant affirmatively contests the evidence on that fact; and (3) the contested factual issue is material to the lawfulness of the challenged conduct. *Doremus v. State*, 530 S.W.3d 277, 286 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). If the defendant raises a fact issue regarding the legality of the evidence at issue, even if the evidence is weak or unbelievable, the

5

trial court must instruct the jury under article 38.23. *Id.* (citing *Holmes v. State*, 223 S.W.3d 728, 730 (Tex. App.—Houston [14th Dist.] 2007), *aff'd*, 248 S.W.3d 194 (Tex. Crim. App. 2008)). Evidence "from any source" can warrant an instruction. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).

## II. Refusing another article 38.23 instruction was not error because the charge allowed the jury to resolve the factual dispute appellant identified.

The State contends appellant requested a special issue—that is, a separate question—in the jury charge regarding whether Mrs. Gaitan's consent came after the police first searched the bedroom, and that there is no authority for such an issue. We disagree. Appellant requested an additional application instruction regarding "the fact issue" he identified, which would be authorized by article 38.23 if the issue were contested and material.

Under *Hubert v. State*, Mrs. Gaitan had actual authority to grant consent to search appellant's bedroom, and the jury was so instructed. 312 S.W.3d 554, 564 (Tex. Crim. App. 2010) (holding grandfather, who let grandson live in his home, gave consent to search grandson's bedroom while grandson was detained in patrol car at the scene). Appellant contends an additional instruction was needed because there was a factual dispute whether Officer Medina "searched [his] bedroom and found the safe and the drugs in the safe prior to getting the consent to search." Officer Medina testified that while he was in a hallway on his way to retrieve a shirt for appellant, he saw the "heavy presence of narcotics" in the bedroom through the open door.[1] Appellant and Mrs. Gaitan both testified that Medina questioned them about the combination to a safe, which could only be observed from within the room, before Medina got consent to search. Appellant also testified that the door to his

---

[1] The State does not raise, and we do not address, any issue regarding the plain-view doctrine.

room was closed.

In light of this testimony, the State concedes there is conflicting evidence regarding whether Medina searched the bedroom and found the safe before obtaining consent to search. The State correctly points out, however, that the record uniformly indicates Medina did not search the safe and find the drugs inside before obtaining consent. Indeed, both appellant and Mrs. Gaitan testified that Medina asked them for the combination, indicating that the safe had not yet been searched. The contested fact issue is therefore narrower than appellant contends.

Focusing on the contested issue, we consider whether the charge given allowed the jury to disregard evidence from Medina's search of the bedroom if it found the search occurred before Medina obtained Mrs. Gaitan's consent. We conclude that it did, and therefore the trial court did not err in refusing appellant's additional instruction.

Absent evidence to the contrary, we assume the jury followed the court's written instructions. *See Elizondo*, 487 S.W.3d at 208. The trial court instructed the jury that "any search of [appellant's] bedroom without a search warrant or without Martha Gaitan's consent would not be lawful." The charge also included an instruction to "disregard any evidence obtained as a result of [Officer Medina's] search" if the State failed to prove beyond a reasonable doubt that Mrs. Gaitan "freely and voluntarily gave Officer Medina consent to search [appellant's] bedroom . . . ." Although these application instructions focus in part on whether Mrs. Gaitan's consent was voluntary, which was another disputed issue, we conclude they also allowed appellant's counsel to argue—and the jury to find—that Officer Medina's search of the bedroom preceded Mrs. Gaitan's consent and was therefore unlawful.

The instruction that "any search of [appellant's] bedroom . . . without Martha Gaitan's consent would not be lawful" is understandable, and nothing in the

7

remainder of the charge made this instruction misleading or confusing. *See Elizondo*, 487 S.W.3d at 208 (noting assumption that jury followed instruction presupposes instruction is understandable and not misleading or confusing). We therefore assume that the jury followed the instructions given, and we hold that the trial court did not err in refusing to submit an additional instruction regarding whether Officer Medina's search preceded Mrs. Gaitan's consent.

## CONCLUSION

Because the charge allowed the jury to resolve the contested fact issue appellant identified, we overrule his sole issue challenging the trial court's refusal to submit an additional instruction and affirm the judgment.

/s/    J. Brett Busby
       Justice

Panel consists of Chief Justice Frost and Justices Busby and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

8