**Opinion issued May 7, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00233-CR

————————————

**JEFF CRAIG JANECKA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 17-CR-1146**

---

### MEMORANDUM OPINION

A jury found Jeff Craig Janecka guilty of possession of methamphetamine in an amount of one gram or more but less than four grams and assessed his punishment at 10 years' confinement. He appeals, contending that the trial court erred by:

(1) denying his motion to suppress evidence, specifically methamphetamine, obtained by the law-enforcement officer who searched his car;

(2) failing to include an instruction in the jury charge as to whether the evidence against him was obtained by an illegal search of his car; and

(3) denying his new-trial motion, which was based on an Internet video that allegedly showed the arresting officer planting drugs in another case.

We affirm.

## BACKGROUND

A grand jury indicted Janecka for possession of methamphetamine in an amount of one gram or more but less than four grams with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.112(a). He pleaded not guilty.

*Motion to Suppress*

Janecka filed a pretrial motion to suppress. The trial court held a hearing on the motion before the jury was empaneled.

Officer C. Murphy of the Galveston Police Department testified that he initiated a traffic stop of a speeding motorist, Janecka, who had driven outside of his lane. When Murphy made contact, Janecka was nervous and appeared intoxicated. Janecka was "twitching and moving uncontrollably, talking really fast, couldn't sit still." Murphy also saw "a torch" or butane lighter sitting on the car's center console "that's commonly used to smoke narcotics." When Murphy asked, Janecka denied ever using methamphetamine. But because Janecka appeared to be under the influence of narcotics, Murphy asked if he could search his car. Janecka said "yes" and again consented to the search of his car when Murphy asked a second time.

2

The State played part of the dash-camera video. Janecka's response to Murphy's request to search his car was difficult to hear.

Janecka testified that he did not consent to Murphy's search of his car. He said that he told Murphy "no" both times that Murphy asked. Janecka agreed that the dash-camera video recorded Murphy asking "Do you mind if I search your vehicle?" and that he replied "no." But Janecka denied that his "no" meant that he did not mind if Murphy searched his car.

The trial court denied the motion to suppress.

*Trial*

Officer Murphy testified about the traffic stop before the jury. He said that he stopped Janecka because he was speeding and did not stay in his lane. Janecka was behind the wheel and a woman, later identified as Shelley Ingleheart, sat in the passenger seat. Janecka acted nervous and Ingleheart seemed tired. Janecka's "responses were kind of strange," "his speech was shaken," and he was making "uncontrollable jerking movements." Based on Janecka's behavior, Murphy concluded that Janecka may have been intoxicated or high on drugs. Murphy saw a butane torch on the car's center console, the kind of torch one "would use to solder" or do "some lightweight welding." According to Murphy, "drug addicts" commonly use this kind of torch "to smoke methamphetamine." After further interaction, Murphy concluded that Janecka "was under the influence of methamphetamine" and

3

asked Janecka for consent to search his car. Janecka said "yes." When Murphy inquired again, asking if Janecka minded if he searched the car, Janecka said "no."

In the search, Murphy testified, he found "small amounts of marijuana," a digital scale that had some white residue on it, and small plastic bags that are commonly used for the sale of drugs. The State introduced the scale and bags into evidence. Defense counsel stated that she had "no objection" to their admissibility. Murphy testified that he subsequently found a bag of "crystal methamphetamine" inside a cup that was in a cup holder in the center console. The bag containing the drugs was the same type as the others found in the car. After discovering the methamphetamine, Murphy detained Janecka, questioned him further, and arrested him. Murphy stated that he did not arrest Ingleheart because it became clear that she "had no idea that the narcotics were present" and she "wasn't under the influence of them."

The State played part of the patrol car's dash-camera video, as well as video from a camera that faced the backseat of the patrol car.

On cross-examination, Murphy conceded that he initially did not recognize the butane lighter for what it was and that Janecka told him about it. Murphy agreed that he left Ingleheart in the car for a period of time and that he did not have her under observation during this period. He also agreed that the cup containing the

methamphetamine belonged to Janecka's passenger, and that Janecka denied that the drugs were his.

Sebastian Frommhold, a chemist with the Texas Department of Public Safety's laboratory, testified about the drugs found in Janecka's car. During his testimony, the State introduced these drugs into evidence, and defense counsel stated that she had "no objection" to their admissibility. Based on the tests that Frommhold performed, he concluded that "the crystalline substance is methamphetamine" weighing approximately 1.14 grams.

Ingleheart also testified. She met Janecka on the Internet and had been speaking with him online for five or six weeks before the day of the traffic stop. He picked her up that day and the two of them went to a bar and grill. This was the first time that they had met in person. After spending about an hour at the grill, they went for a drive in Janecka's car, which ended when Murphy stopped them. Ingleheart testified that the drugs Murphy found in her cup were not hers. But she did not see Janecka put anything in her cup.

Ingleheart also testified that she and Janecka texted after his arrest. In these texts, Janecka accused Murphy of being "dirty." When Ingleheart texted that the drugs were found in Janecka's car, he replied: "Yeah, by accident. I was halfway to you when I noticed. I can't say I'm sorry enough." Janecka also wrote that Murphy "had no probable cause to search my car. I never gave him consent."

After these three witnesses testified, the State rested.

Outside the presence of the jury, the court held a hearing concerning an Internet video that had come to the defense's attention during trial. This video allegedly showed Murphy planting drugs in another, unrelated traffic stop. The trial court ruled that the video was inadmissible.

The defense then rested without presenting any evidence.

The trial court gave the parties its proposed jury charge, and neither the State nor the defense objected to it. The charge submitted both possession of methamphetamine with intent to deliver and the lesser-included offense of possession to the jury. It did not include an instruction as to whether Janecka consented to the search of his car.

The jury found Janecka guilty of the lesser-included offense of possession of methamphetamine in an amount of one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.115(a). It assessed his punishment at 10 years of confinement.

*Motion For New Trial*

Janecka moved for a new trial, contending that the trial court erred in refusing to allow the defense to introduce the Internet video about Officer Murphy's purported attempt to plant drugs during another traffic stop and in disallowing the defense from questioning Murphy about the incident.

6

The trial court held a hearing, during which the defense introduced the video. The video is about four and a half minutes long. It has no audio. It shows a traffic stop and arrest, and was filmed by an unidentified person from the window of a home on the street where the traffic stop occurred. As defense counsel conceded at the hearing, it is not self-evident from the video that the arresting officer planted evidence. Defense counsel merely represented that the video showed "some things that might be consistent with that" allegation.

Murphy testified at the hearing. He agreed that he was the officer in the video. But he stated that the video had been edited or altered so that it did not accurately reflect the events that occurred. According to Murphy, the Galveston Police Department investigated the events underlying the video and found that the claims against him were false.

The trial court denied Janecka's new-trial motion.

## DISCUSSION

### I. Motion to Suppress

Janecka contends that the trial court erred in denying his motion to suppress the evidence found by Officer Murphy during the search of Janecka's car. The State responds that Janecka failed to preserve this issue for review.

## A.     Error preservation

An adverse ruling on a motion to suppress evidence ordinarily preserves error without the need for further objection when the evidence is introduced at trial. *Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). But when a defendant affirmatively states that he has "no objection" to the admissibility of the evidence when the State offers it at trial, he forfeits the right to challenge the adverse ruling on his motion on appeal, unless the record otherwise shows that he did not intend to abandon the position advanced in his suppression motion. *Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015); *Thomas*, 408 S.W.3d at 881–82, 884–85. If the record is ambiguous as to whether the defendant intended abandonment, then his statement that he has "no objection" to the evidence waives any error. *Stairhime*, 463 S.W.3d at 906; *Thomas*, 408 S.W.3d at 885–86.

## B.     Analysis

Defense counsel twice stated during trial that she had "no objection" to the admission of evidence obtained by Officer Murphy during his search of Janecka's car. Counsel first did so during Murphy's testimony, when the State offered into evidence the digital scale and plastic bags. Counsel did so again during Frommhold's testimony, when the State offered into evidence the methamphetamine. The record does not qualify defense counsel's statement of "no objection" in any fashion; nor is there any indication that the trial court understood that Janecka intended to preserve

the suppression issue for appeal. When the trial court asked counsel if they had any objections to its proposed charge, which omitted an instruction as to whether Janecka consented to Murphy's search, defense counsel responded that she had no objection to it. Janecka therefore forfeited review of the trial court's denial of his motion to suppress. *See Stairhime*, 463 S.W.3d at 906; *Thomas*, 408 S.W.3d at 885–86.

## II. Jury Charge Error

Janecka contends that Officer Murphy's warrantless search of his car was illegal because it was conducted without his consent. He further contends that the trial court erred in failing to instruct the jury to disregard the evidence found by Murphy if the jury believed that Murphy's search was illegal. The State implicitly concedes that the trial court erred in omitting this instruction from the charge but responds that Janecka did not object to the charge and did not suffer the egregious harm required for reversal as a result of the instruction's omission.

### A. Standard of review and applicable law

When the evidence raises an issue as to whether particular evidence was illegally obtained, the trial court must instruct the jury to disregard that particular evidence if the jury believes, or has a reasonable doubt, that the evidence was illegally obtained. TEX. CODE CRIM. PROC. art. 38.23(a); *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). The evidence justifying an instruction under article 38.23(a) can arise from any source, even if it is weak, contradicted by

9

other evidence, or unbelievable. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). A defendant is entitled to this instruction even if he did not object to the admission of the evidence he asserts was illegally obtained. *See Holmes v. State*, 248 S.W.3d 194, 202 (Tex. Crim. App. 2008). When, however, the defendant fails to object to the omission of an article 38.23(a) instruction from the charge, our review is confined to determining whether he suffered egregious harm as a result of its omission. *See Gelinas v. State*, 398 S.W.3d 703, 705–06 (Tex. Crim. App. 2013); *see also Pickens*, 165 S.W.3d at 680 (jury charge error that defendant did not object to merits reversal only when error caused him egregious harm).

Harm is egregious if it deprives the defendant of a fair and impartial trial. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). This stringent standard is satisfied only if the jury-charge error "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). In assessing the impact of charge error, we consider the charge as a whole, the state of the evidence, counsels' arguments, and any other relevant information in the record. *Id.* The record must show that the defendant suffered actual, as opposed to theoretical, harm. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Neither party bears the burden to show egregious harm or its absence. *Marshall*, 479 S.W.3d at 843.

**B.    Analysis**

The trial court erred in omitting an article 38.23(a) instruction. Officer Murphy testified that Janecka consented to the search of his car. The State also introduced a text message written by Janecka in which he disputed consent. The evidence therefore raised an issue as to whether Murphy obtained the methamphetamine, digital scale, and plastic bags by illegally searching the car. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (consent is exception to general rule that search requires warrant issued on probable cause); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) (same).

The jury charge omitted an instruction as to Janecka's consent and the legal effect of a search made without consent. Thus, the relevant law was entirely missing from the jury's instructions, which weighs in favor of Janecka's claim of egregious harm but not heavily so. *See Villareal*, 453 S.W.3d at 433 (omission of instruction weighed in favor of harm but only somewhat because correct instruction still would have allowed jury to draw conclusion adverse to defendant's position).

While the evidence raised the issue of whether Janecka consented to Murphy's search of his car, Janecka's consent was not vigorously contested at trial. Janecka's brief text message was the lone evidence before the jury suggesting that he might not have consented to the search, and it was introduced by the State, not Janecka. On direct examination, Murphy said that Janecka consented. Though defense counsel

11

cross-examined Murphy about the search, she did not question him on the issue of Janecka's consent. The state of the evidence therefore does not weigh in favor of Janecka's claim of egregious harm. *See id.* at 439 (mere existence of conflict in evidence didn't support conclusion that defendant suffered egregious harm; evidence favoring defendant's position was weak and thus absence of instruction likely didn't alter verdict).

Defense counsel raised Janecka's non-consent in both her opening statement and closing argument, but she did so only in passing. Defense counsel did not explicitly argue that the search was illegal as a result of Janecka's ostensible refusal to consent or suggest to the jury how the illegality of Murphy's search should inform the verdict. In closing argument, defense counsel devoted more time to Ingleheart's credibility and Murphy's discovery of the methamphetamine in her cup. Janecka's defense was that the drugs did not belong to him or that the State had failed to prove beyond a reasonable doubt that he possessed them. Counsels' arguments therefore likewise do not weigh in favor of Janecka's claim of egregious harm. *See id.* at 440–42 (absence of instruction did not go to vital aspect of case given that instruction concerned only a secondary defensive theory and was not the center of the arguments made to the jury).

No other information in the record sheds light on the issue of harm.

On this record, the state of the evidence and the arguments of counsel are the decisive considerations as to whether Janecka suffered egregious harm from the omission of an article 38.23(a) instruction. The jury heard minimal evidence suggesting that Janecka did not consent. It was of a type and quality—a perfunctory text message—less likely to be credited by the jury over Murphy's contrary live testimony and neither side emphasized it. Defense counsel likewise focused her jury argument on matters other than Janecka's consent to the search of his car, specifically whether the drugs belonged to him. In sum, whether Janecka consented to or refused Murphy's request to search his car was not the focus of trial and therefore most likely would not have been the focus of the jury's deliberations even if an article 38.23(a) instruction had been included in the charge. We thus hold that Janecka was not egregiously harmed by the omission of this instruction.

## III. New-Trial Motion

Janecka contends that the trial court erred in denying his new-trial motion based on a video that he says may show Murphy planting evidence in another case. He argues that exclusion of this evidence deprived him of his constitutional right to confront Murphy at trial. Citing Rule 608(b) of the Rules of Evidence, the State responds that specific instances of alleged misconduct are inadmissible and that the Confrontation Clause does not require the video's admission.

13

## A. Standard of review and applicable law

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Briggs v. State*, 560 S.W.3d 176, 183–84 (Tex. Crim. App. 2018). Under this deferential standard, we view the evidence in the light most favorable to the ruling. *Id.* at 184. A trial court abuses its discretion only if no reasonable view of the record could support its ruling. *Id.* Thus, we must uphold its ruling if it is correct on any applicable legal theory, even if the trial court relied on an invalid one. *Id.*

The Confrontation Clause of the Sixth Amendment of the United States Constitution gives a defendant a right to cross-examine the witnesses against him. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Notwithstanding this constitutional guarantee, a trial court retains broad discretion to impose reasonable limits on cross-examination to prevent prejudice, confusion of the issues, and the injection of collateral matters. *Id.* Trial courts must evaluate confrontation claims on a case-by-case basis and should balance the probative value of the evidence sought to be introduced against the risks its admission may entail. *Id.*

Excepting certain criminal convictions, "a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b); *see also* TEX. R. EVID. 404(b)(1) (evidence of crimes and other wrongs inadmissible to prove that witness acted in conformity with bad character). If the Confrontation

14

Clause conflicts with the rules of evidence, the Constitution controls. *Lopez*, 18 S.W.3d at 222–23. Thus, when an evidentiary rule makes evidence inadmissible, we must consider whether the Confrontation Clause requires admissibility. *Id.* at 225.

**B.     Analysis**

Evidence as to Officer Murphy's alleged misconduct during an unrelated traffic stop generally would be inadmissible. TEX. R. EVID. 404(b)(1), 608(b); *e.g.*, *Canada v. State*, 547 S.W.3d 4, 20–21 (Tex. App.—Austin 2017, no pet.) (trial court did not abuse discretion in excluding prior complaints made against officer). We thus must balance the probative value of the video against the risks entailed by its introduction to determine whether the Confrontation Clause nonetheless required its admission in this case. *See Lopez*, 18 S.W.3d at 225.

The trial court reasonably could have found that the video's probative value was low or nonexistent. It concerns an unrelated traffic stop. The video lacks audio, and Murphy testified that it did not accurately depict the encounter and seemed to have been edited. The defense conceded that the video did not establish that Murphy had planted drugs during the other traffic stop, and Murphy testified that the department investigated the allegation and cleared him of any wrongdoing. The record is devoid of evidence that Murphy planted the drugs in Janecka's car. At trial, Janecka did not suggest through cross-examination or argument that Murphy had done so. Indeed, Janecka acknowledged in his text message to Ingleheart that the

drugs belonged to him. On this record, the Confrontation Clause did not require the video's admission. *See id.* at 225–26 (Confrontation Clause did not require admission of complainant's prior false accusation of physical abuse that had little in common with complainant's current allegation of sex abuse against defendant); *Tollett v. State*, 422 S.W.3d 886, 893 (Tex. App.—Houston [14th Dist.] 2014, pet ref'd) (Confrontation Clause did not require trial court to allow cross-examination of police officer about his firing).

The exclusion of the video at trial was a reasonable exercise of the trial court's discretion. We thus hold that the trial court did not abuse its discretion in denying Janecka's motion for new trial, which was premised on the video's admissibility.

## CONCLUSION

We affirm the judgment of the trial court.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).

16