**Affirmed and Memorandum Opinion filed August 13, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00262-CR

---

**ALBERTO CARLOS PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1766089**

---

## M E M O R A N D U M   O P I N I O N

Appellant Alberto Carlos Perez challenges his conviction for burglary of a habitation. In his first three issues, he challenges the trial court's denial of his motions to suppress his statement to law enforcement and evidence gathered from his apartment. In his last issue, appellant argues that the trial court erred in refusing an instruction in the jury charge that would have allowed the jurors to disregard evidence obtained from an illegal search. We hold that the trial court did

not err in denying the motions to suppress or in denying the requested instruction. Accordingly, we overrule appellant's issues and affirm the trial court's judgment.

## Background

Detective Blair Cerny with the Memorial Villages Police Department was dispatched on a call for burglary of a habitation. When he arrived, he saw the back door was broken and the home was in disarray. The homeowner reported items missing. Surveillance video from a neighbor's house showed a suspect vehicle, which was registered to appellant's girlfriend, Liliana Castrejon.

Detective Cerny, wearing a body camera that recorded the entire interaction at issue today, went to Castrejon's address at an apartment complex and "knocked on the door repeatedly." Three other uniformed officers staged themselves around the perimeter of the unit. There was no answer, but another officer reported seeing "a male, possibly Hispanic, looking through the back window of the apartment."

Detective Cerny walked away from the apartment for approximately thirty-five minutes to talk to other officers and to contact the apartment manager. When Detective Cerny returned to the apartment, he knocked for the sixth time, saying, "Police department, open up, we're not leaving. You might as well come out the door and open up. . . . You're only making it tougher on yourself." Still, there was no answer.

Detective Cerny was leaving the apartment complex to obtain a search warrant for the car when he saw Castrejon walking through the parking lot and approached her. She confirmed that appellant lived with her in the apartment. Detective Cerny told Castrejon that he needed to speak to appellant. Castrejon knocked on the door, and appellant opened it.

2

Appellant stepped outside. Detective Cerny did not arrest him or place him in handcuffs. Detective Cerny did not tell appellant that he could not leave. Detective Cerny and appellant spoke for "quite some time." Detective Cerny informed appellant "that when you use a car in the course of a crime, especially a felony, that in Texas it is subject to forfeiture." Detective Cerny denied telling appellant this information in an effort to make him talk to law enforcement. Appellant appeared to Detective Cerny to be concerned or confused as to what was going to happen that day. He repeatedly asked if he was going to go to jail, and Detective Cerny answered, "I can't tell you that." However, Detective Cerny testified, and the video reflects, that he told appellant "multiple times" that he was not under arrest. Detective Cerny told appellant that if he cooperated and the officer retrieved the stolen items, then Detective Cerny would not arrest appellant that day, so long as there was "nothing serious" in appellant's record, which the officer had not yet checked.

Detective Cerny told appellant, "I have all the proof to show it was you in there," committing the burglary. Detective Cerny testified that he told appellant that he had "probable cause" because he wanted appellant to know that it was in his best interest to speak to police.

Detective Cerny asked appellant to go to the police station to speak about the investigation, and appellant agreed. Detective Cerny did not threaten to arrest appellant if he refused to go to the station.

Appellant sat in the front passenger seat as Detective Cerny drove to the police station. During the drive, Detective Cerny did not tell appellant that he was required to speak to the officer and did not tell appellant that he would be arrested if he went to the station. Detective Cerny reminded appellant that he "chose" to go to the station and that appellant could go back to the apartment at any time. Before

3

reaching the station, appellant admitted to Detective Cerny that he was involved in the burglary and that he still had possession of some of the stolen items. Detective Cerny testified, "you know, I'd already gave him my word that he wasn't going to be arrested so -- and there was no point in us going to the police department to speak with him any further, so I turned around and we went back to his apartment."

Upon arriving at the apartment, Detective Cerny did not arrest appellant. Appellant led Detective Cerny into the apartment and showed the officer the stolen property. Detective Cerny then ran appellant's name and date of birth "through the system" and discovered that appellant had an outstanding warrant. At that point, Detective Cerny arrested appellant.

Detective Cerny testified that appellant was "able to leave up to the point at the very end when [the officer] ran his driver's license and [discovered] he had a warrant that [Detective Cerny] could not allow him to leave on."

Appellant was indicted for burglary of a habitation. Prior to trial, he filed two motions to suppress, one regarding evidence from the search of the apartment and another regarding the statement he gave to police. Detective Cerny testified at the suppression hearing and the State introduced the video from the officer's body-worn camera. The trial court denied the motions without making any findings of fact.

Appellant requested a jury charge instruction permitting the jury to disregard the evidence seized in the search of the apartment if the jury concluded the evidence was illegally obtained. The trial court denied the request.

The jury found appellant guilty as charged in the indictment and assessed punishment of thirty years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant timely appealed.

4

**Analysis**

In three issues, appellant challenges the trial court's denial of his motions to suppress. In a fourth issue, appellant argues that the trial court erred by denying his request to include an instruction in the jury charge regarding evidence obtained during an illegal search.

## A. Motions to Suppress

### 1. *Standard of review*

An appellate court reviews a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's findings of historical facts that are reasonably supported by the record and to its resolution of mixed questions that turn on credibility or demeanor when reviewing a ruling on a motion to suppress. *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex. Crim. App. 1997). We review de novo a trial court's legal conclusions and its resolution of mixed questions that do not turn on credibility or demeanor. *Id.*

### 2. *Was the encounter custodial?*

In his first issue, appellant argues that he was in custody when he admitted to Detective Cerny his role in the burglary. Because he was not given *Miranda* warnings, appellant continues, his recorded statement should have been suppressed.

The Fifth Amendment to the United States Constitution commands that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The warnings articulated by the United States Supreme Court in *Miranda* were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation.

*Miranda v. Arizona*, 384 U.S. 436, 442-57, 467-79 (1966).  The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.* at 444.  Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief.  *Id.*

When considering "custody" for *Miranda* purposes, we apply a "reasonable person" standard—"[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest."  *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)).  Our custody inquiry also includes an examination of all the objective circumstances surrounding the questioning.  *Id.* at 255.  The subjective belief of law enforcement officials about whether a person is a suspect does not factor into our custody determination unless an official's subjective belief was somehow conveyed to the person who was questioned.  *Stansbury*, 511 U.S. at 323-25.

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding.  Tex. Code Crim. Proc. art. 38.22.  Section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things:  (1) the statement was electronically recorded; (2) the defendant was warned in accordance with section 2(a) before the statement was made and the warnings are included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights communicated to him by the warnings.  *Id.* art. 38.22, § 3(a)(1)-(2).  The warnings provided in section 2(a) are virtually identical to the *Miranda* warnings, *id.* art. 38.22, §§ 2(a), 3(a)(2), with

6

one exception—the warning that an accused "has the right to terminate the interview at any time" as set out in section 2(a)(5) is not required by *Miranda*. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). As with the *Miranda* warnings, the warnings in section 2(a) of article 38.22 are required for admissibility of an accused's statement only when there is custodial interrogation. Tex. Code Crim. Proc. art. 38.22, §§ 3(a), 5. Our construction of "custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Wicker v. State*, 740 S.W.2d 779, 785 (Tex. Crim. App. 1987).

At trial, the defendant bears the initial burden of proving that a statement was the product of custodial interrogation:

> The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with *Miranda* . . . warnings unless and until the defendant proves that the statements he wishes to exclude were the product of custodial interrogation. Thus, the State has no burden at all unless 'the record as a whole clearly establishe[s]' that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. It is the defendant's initial burden to establish those facts on the record.

*Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005) (quoting *Paez v. State*, 681 S.W.2d 34, 36 (Tex. Crim. App. 1984)).

A trial judge's ultimate custody determination presents a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 112-13 (1995). Therefore, as discussed above, we afford almost total deference to a trial judge's ruling when the questions of historical fact turn on credibility and demeanor. *Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex. Crim. App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's custody determination de novo. *Id.* at 381-82 (citing *Guzman*, 955 S.W.2d at 89).

7

Additionally, when a trial judge denies a motion to suppress and does not sign findings of fact on a specific issue, the evidence is viewed "in the light most favorable to the trial court's ruling" and we "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In *Dowthitt*, the Court of Criminal Appeals outlined four general situations that may constitute custody: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 255.

For the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.* For the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and custody is established only if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe he is under restraint to a degree associated with an arrest. *Id.*; *Stansbury*, 511 U.S. at 325. An officer's subjective intent to arrest the suspect is irrelevant unless that intent is communicated or otherwise manifested to the suspect. *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury*, 511 U.S. at 324-25 (police knowledge or beliefs bear on the custody issue only if they are conveyed to the suspect)). To evaluate whether a reasonable person in the suspect's situation would have felt that there was a restraint on his freedom to a degree associated with arrest, the record must establish the circumstances manifested to and

experienced by him.  *State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012) ("[O]nly the objective circumstances known to the detainee should be considered in deciding what a reasonable person in his position would believe."); *see also Thompson*, 516 U.S. at 113 ("[I]f encountered by a 'reasonable person,' would the identified circumstances add up to custody[?]"); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

Appellant argues that he was in custody because his freedom of movement was significantly restricted and because Detective Cerny had probable cause to arrest him and did not inform appellant he could leave—i.e., the third and fourth *Dowthitt* scenarios.  Appellant contends that, "[a]lthough Cerny did not use the words, 'you cannot leave,'" while appellant was inside the apartment, Detective Cerny "made it very clear that Appellant could not get away from law enforcement because they were not going to leave."  Appellant also points to Detective Cerny's statement that he "ha[d] enough" evidence to take appellant to jail.

The trial court did not conclude explicitly that appellant was not in custody; however, the court found certain facts pertaining to the voluntariness of appellant's statement, *see infra*, some of which are also relevant to the custody issue.  We review the record to determine if there is evidence supporting actual or implied findings in favor of the court's ruling.  *See State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (we defer to explicit findings so long as they are supported by the record); *Ross*, 32 S.W.3d at 855; *see also Tran v. State*, No. 01-11-00141-CR, 2012 WL 3133925, at *3 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet. ref'd) (mem. op., not designated for publication) (applying light-most-favorable standard to record and assuming implicit findings to support suppression ruling even though trial court entered explicit findings of facts).  Here, the record—

9

including Detective Cerny's testimony at the suppression hearing and the video recording from his body-worn camera—establishes that:

- Detective Cerny repeatedly told appellant that he was not under arrest but that cooperation would be beneficial.

- Neither Detective Cerny nor any other officer used physical force or threats of physical force when interacting with appellant. Appellant was not physically restrained or placed in handcuffs.

- Detective Cerny told appellant that he would not be arrested that day.

- Appellant voluntarily accompanied Detective Cerny on the drive to the police station, during which he confessed to the offense.

- Upon hearing appellant's confession, Detective Cerny returned appellant to his apartment.

- Only after discovering the outstanding warrant did Detective Cerny arrest appellant.

The trial court found the following facts relevant to custody:

2. Based on this Court's assessment of Cerny's demeanor and testimony in the suppression hearing and at trial, as well as this Court's review of Cerny's body-worn camera video—admitted as State's Exhibit 32—this Court finds that Cerny's testimony was truthful and credible in all respects.

7. During this knocking, neither Cerny nor any other officer at the scene ever drew their firearms, or threatened to or actually used any amount of force against the apartment door.

9. Cerny spoke to Castrejon, who told him that Defendant—her boyfriend—was inside the apartment and that he had driven her Impala that morning. Cerny told Castrejon that he needed to speak to Defendant and then walked with her to her apartment door, where she knocked and called to Defendant to open the door. Defendant opened

10

the door in response to Castrejon and Cerny advised him that he needed to speak to him about an investigation.

10. Defendant agreed to come outside to talk to Cerny, and he and Cerny then had a relatively lengthy conversation about the burglary, Cerny's investigation, and Cerny's desire that Defendant cooperate with Cerny by providing a statement about Defendant's role in the crime, and by helping Cerny recover the property stolen from the complainant's residence.

11. During this conversation, Cerny used a conversational, non-threatening tone with Defendant. Cerny never handcuffed Defendant, never told Defendant that he was under arrest or was not free to leave, and never displayed his firearm or otherwise made any show of force towards Defendant. Other officers at the scene drew closer to Cerny and Defendant during their conversation, but still stood far enough away to not be threatening, kept their firearms holstered, made no move to restrain Defendant, and were uninvolved in Cerny's and Defendant's conversation.

12. During their conversation, Cerny repeatedly advised Defendant that he was not under arrest and that it was Defendant's choice whether or not to cooperate with Cerny's investigation in any capacity. Though Cerny was persistent in his encouragement that Defendant cooperate, he did not threaten Defendant with arrest if Defendant declined to do so. Rather, Cerny repeatedly told Defendant that if he chose not to accompany Cerny to the police station and provide a statement, Cerny would leave the apartment complex and continue his investigation in other ways, such as by seeking warrants.

13. Defendant hesitated and equivocated during his conversation with Cerny, concerned that he was going to go to jail. However, Defendant nonetheless eventually agreed to accompany Cerny to the police station to give a statement. At that point, Cerny patted Defendant down for weapons but still did not handcuff or otherwise restrain him, and then allowed him to sit in the front passenger seat of Cerny's vehicle.

14. Cerny did not read Defendant *Miranda* and Texas Code of Criminal Procedure Article 38.22 warnings at any time during their encounter.

15. During their drive to the police station, Cerny and Defendant discussed the stolen property and Defendant confessed to committing

11

the burglary. Defendant also told Cerny he would show him were some of the stolen property was inside Castrejon's apartment. Cerny then advised Defendant that, per their previous conversation, Cerny was not going to arrest Defendant that day, but would instead pursue an arrest warrant, which Defendant would have to answer to at a later date. Cerny then turned the car around and drove Defendant back to Castrejon's apartment.

The trial court impliedly concluded that appellant was not in custody when he confessed to committing the offense. Appellant challenges the trial court's determination of custody. We conclude that the trial court's express and implied findings or conclusions that appellant was not in custody have evidentiary support.

When a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime, the person is not restrained in his freedom of movement. *Nickerson v. State*, 312 S.W.3d 250, 256 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Ard v. State*, 418 S.W.3d 256, 261 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (same). In that situation, the suspect is not in custody. *Nickerson*, 312 S.W.3d at 256-57 (holding officers' entry into suspect's home and suspect's voluntarily accompaniment to station with officers who never drew weapons or put suspect in handcuffs did not amount to custodial interrogation because appellant was "never physically deprived of his freedom in any significant way, . . . told he could not leave [or] restricted in his movement to amount to an arrest").

Although Detective Cerny told appellant there was cause to arrest him for burglary, the other objective circumstances support the trial court's conclusion that appellant was not, in fact, in custody. Significantly, Detective Cerny repeatedly told appellant that he was not under arrest, even when essentially conveying to

appellant the officer's belief of appellant's complicity. *See Oregon v. Mathiason*, 429 U.S. 492, 493-96 (1977) (holding defendant was not in custody when he confessed to burglary during voluntary questioning at police station; although officer relayed information to defendant regarding his involvement and stated his truthfulness might be considered by the district attorney or judge, officer also told defendant he was not under arrest, and he was allowed to leave after confession); *Randall v. State*, No. 14-06-00468-CR, 2008 WL 5262738, at *4-6 (Tex. App.— Houston [14th Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) ("Despite the officers' manifestation of probable cause to appellant during the second part of the interview and their failure to explicitly inform appellant he was free to leave, we conclude the fourth *Dowthitt* scenario was not satisfied.").

We conclude the evidence is sufficient to support the trial court's express and implied findings that appellant did not establish that he was in custody under the third and fourth *Dowthitt* scenarios. We overrule appellant's first issue.

3. *Was appellant's statement voluntary?*

In his second issue, appellant argues that the trial court erred in denying the motion to suppress because his statement to Detective Cerny was not voluntary.

Under the Due Process Clause and articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, a confession must be voluntary to be admissible. *See* U.S. Const. amend. XIV; Tex. Code Crim. Proc. arts. 38.21, 38.22. A statement is considered involuntary if: (1) police engaged in objectively coercive activity; (2) the statement is causally related to the coercive government misconduct; and (3) the objectively coercive activity overbore the defendant's will. *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020). The Due Process Clause protects suspects from police overreaching; it does not protect people from themselves or

other private actors, and absent all of the above factors, there is no due process violation. *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). Because police overreach is a predicate to due-process relief, and appellant's state-law claim is based on only police overreach, the threshold issue is whether Detective Cerny objectively engaged in coercive tactics.[1]

Of the express findings excerpted above, findings 11-15 are also relevant to the voluntariness question.[2] The court also made the following conclusions:

> 6. Here, Cerny persuaded and coaxed Defendant to cooperate and provide a statement, including by confronting Defendant with the difficult circumstances that he was in and by telling Defendant and Castrejon that Cerny had firm evidence that Defendant was involved in the burglary. However, Cerny's efforts to convince Defendant to cooperate did not overcome Defendant's free will or compel Defendant to make a statement.
>
> 7. Rather, Cerny repeatedly explained to Defendant that: while it might benefit Defendant to cooperate, it was Defendant's choice whether or not to do so; Defendant was not required to provide a statement; and, if Defendant chose not to cooperate, Cerny would leave and simply continue his investigation via alternative means. Further, neither Cerny nor any other officer displayed their firearms, or threatened or used any force whatsoever against Defendant at any time.
>
> 8. Accordingly, under the totality of the circumstances, Defendant's statement was made freely and voluntarily, without police compulsion

---

[1] A defendant can prove that his confession was involuntary based on his state of mind even in the absence of police overreach under articles 38.21 and 38.22, but appellant's only complaint on appeal is police overreach so we confine our analysis to that question. *Lopez*, 610 S.W.3d at 496 n.5

[2] Although the trial court initially did not make any findings of fact after denying appellant's motions to suppress, we abated the appeal for the trial court to sign written findings of fact on the voluntariness issue, and the court complied. *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) ("We hold that written findings are required in all cases concerning voluntariness.").

14

or persuasion to a degree that overcame Defendant's free will.

After reviewing the reporter's record of the suppression hearing and the video of the interaction between Detective Cerny and appellant, and mindful that we view the record in the light most favorable to the trial court's ruling, we conclude that Detective Cerny did not engage in objectively coercive conduct. The record supports the trial court's findings that appellant voluntarily went to the police station to give a statement; that he was told that he was not under arrest; and that he was not placed in handcuffs. *See Cameron v. State*, 630 S.W.3d 579, 595 (Tex. App.—San Antonio 2021, no pet.) (defendant's statement was voluntary when she voluntarily went to the police station for her interview; she was repeatedly told she was not under arrest and would be going home; and she was not handcuffed); *Hernandez v. State*, 421 S.W.3d 712, 719-23 (Tex. App.—Amarillo 2014, pet. ref'd) (holding that police officer's statements that the defendant faced incarceration, that she could be separated from her children, and that cooperation could result in leniency were not sufficiently coercive to render her statements involuntary).

Appellant asserts that Detective Cerny "threatened" appellant by making statements such as:

- "You're only making it tougher on yourself."

- "[I]f you make it tough on me, . . . it's not going to look good on you, brother."

- "I don't think you need to put [Castrejon] through all that, given she's pregnant."

- "If you refuse to talk to me, and you refuse to do anything, I'm going to continue my investigation. I'm not going to tell you what it's going

15

to lead to. But I can tell you I'm not leaving. And I can tell you it involves your car and your house. So I'm going nowhere, so you can either work, try to help yourself out, or I'll continue on, and we'll get a warrant for your arrest. I'll pick you up, and then whenever you get out, you get out. Hopefully, your wife hasn't had her baby."

Detective Cerny also implied that Castrejon's vehicle would be seized and that Castrejon herself might face charges if appellant did not cooperate. However, none of the above statements show that Detective Cerny threatened appellant, only that the officer told appellant "how things might unfold." *Lopez*, 610 S.W.3d at 497. The car involved in the offense belonged to Castrejon; Detective Cerny's reference to its potential seizure and to Castrejon's potential liability "accurately reflect[ed] the state of the investigation." *Id.*

Moreover, Detective Cerny's comments that he would not take appellant to jail that day and that things would be easier for appellant if he cooperated do not constitute police overreaching. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (observing that general statements regarding how a confession may sometimes result in leniency do not render a confession involuntary); *Herrera v. State*, 194 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding investigator's statement, "We can talk to the D.A., get you an offer, if you help us," not specific enough to influence appellant to speak untruthfully); *Ramirez v. State*, 76 S.W.3d 121, 126 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("Appellant has failed to demonstrate that the party in authority positively and unequivocally promised leniency in return for a confession.").

Because the State met its burden to establish that appellant made his statement voluntarily, we hold the trial court did not abuse its discretion when it denied appellant's motion to suppress. We overrule appellant's second issue.

4. *Was appellant's implied consent to search Castrejon's apartment voluntarily given?*

In his third issue, appellant argues that the evidence recovered from his apartment should have been suppressed because the search was conducted without a warrant and Detective Cerny did not have consent to enter the apartment.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without the prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject to only a few specifically established and well delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). One established exception is a search conducted with the person's consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

A person's consent to search can be communicated in various ways, "including by words, action, or circumstantial evidence showing implied consent." *Meekins*, 340 S.W.3d at 458. Texas courts have held that when a law enforcement officer requests consent to search or otherwise puts the question to the detainee in a way that does not indicate command or compulsion, a wordless action or gesture can be sufficient to show consent. *See Kendrick v. State*, 93 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

"But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228; *see also Meekins*, 340 S.W.3d at 459. Whether consent was voluntary is determined from the totality of all the circumstances. *Schneckloth*, 412 U.S. at 221; *Meekins*, 340 S.W.3d at 458-59. In determining the voluntariness of a person's consent, courts review the totality of the circumstances

17

of a particular police-citizen interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Meekins*, 340 S.W.3d at 459. The ultimate question is whether the person's "will ha[s] been overborne and his capacity for self-determination, critically impaired" such that his consent to search cannot have been voluntary. *Id.* Consent is not rendered involuntary merely because the accused is under arrest. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002).

While in the car en route to the police station, appellant confessed to the offense and offered to return to Detective Cerny the property that appellant still had in his possession or control. Detective Cerny said he would take appellant back the apartment and pursue an arrest warrant that appellant would "have to face" at a later date.

When Detective Cerny and appellant returned to the apartment complex, the officer said, "We'll walk in, we'll get it, and that's it, alright? Then I'll get your information and I'm gone." Appellant made no verbal reply, but instead led Detective Cerny into the apartment, without making any indication that Detective Cerny could not accompany him inside or that he did not want Detective Cerny to enter. Inside the apartment, appellant gave the officer a game system and two televisions, all of which belonged to the complainant. Thus, the record establishes that appellant impliedly consented to Detective Cerny entering the apartment, where appellant surrendered the stolen goods. The record is also devoid of evidence showing that appellant's implied consent was not voluntarily given. *See Nanny v. State*, No. 03-16-00196-CR, 2016 WL 7046818, at *8 (Tex. App.—Austin Nov. 30, 2016, no pet.) (mem. op., not designated for publication) (defendant gave implied consent when officer asked for permission to enter the

18

home and defendant agreed to the request by nodding his head and by opening the door and letting the officer inside); *see also Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (explaining that consent to search "may be given orally or by action, or shown by circumstantial evidence"); *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (stating that consent to enter home could be inferred from defendant's action of motioning officer to come forward and enter home).

We overrule appellant's third issue.

## B.     Denial of Jury Instruction

In his fourth and final issue, appellant raises a complaint of jury-charge error.    Appellant requested a jury instruction that would allow the jurors to disregard evidence recovered during the "illegal" search of appellant's apartment. The trial court denied appellant's requested instruction.

Article 38.23(a) provides that evidence obtained in violation of the Constitution or laws of the United States or Texas may not be admitted in a criminal case.    *See* Tex. Code Crim. Proc. art. 38.23(a); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).    When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *See* Tex. Code Crim. Proc. art. 38.23(a); *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).

To be entitled to an article 38.23(a) instruction, the defendant must show that:  (1) an issue of historical fact was raised in front of the jury; (2) the fact was

contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson*, 377 S.W.3d at 719; *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly. *Robinson*, 377 S.W.3d at 719.

Evidence to justify an article 38.23(a) instruction can derive "'from any source,'" no matter whether "'strong, weak, contradicted, unimpeached, or unbelievable.'" *Id.* (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). But the evidence must raise a "'factual dispute about how the evidence was obtained.'" *Id.* (quoting *Garza*, 126 S.W.3d at 85). When the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Id.*

Appellant argues that there are factual questions whether appellant provided valid consent or whether Detective Cerny had implied consent to search the apartment. These are not disputed facts; these are disputed conclusions. The facts underlying the consent issue are undisputed. There was no dispute for the jury to resolve concerning the material historical facts underlying Detective Cerny's entry into appellant's apartment. Rather, the entirety of Detective Cerny's and appellant's interaction was captured on video and the officer's testimony was wholly consistent with what was depicted in the video, even during cross-examination. Thus, the undisputed factual evidence presented only a question of law as to the legality of Detective Cerny's undisputed conduct, which was properly reserved for the trial court to determine. *See id.* at 718-22 (concluding that an article 38.23(a) instruction was not warranted when the evidence did not establish a

20

factual dispute, but rather only a dispute as to the legal significance of undisputed facts, which is "a dispute that juries are not authorized to resolve"); *Tollett v. State*, 422 S.W.3d 886, 897-98 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

We overrule appellant's fourth issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b)