

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00711-CR & 04-24-00712-CR

Alan Angelo **NAVARRO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 2023-0089-CR & 2024-0169-CR
Honorable Robert E. Cadena, Judge Presiding

Opinion by:   Lori Massey Brissette, Justice

Sitting:       Irene Rios, Justice
               Lori Massey Brissette, Justice
               Adrian A. Spears II, Justice

Delivered and Filed: February 25, 2026

AFFIRMED

In this appeal, Appellant Alan Angelo Navarro seeks to overturn his conviction for two counts of sexual assault by asserting the trial court admitted character evidence that should have been excluded under Texas Rule of Evidence 404. Based on our review of the record, the law and the parties' briefs, we affirm.

**BACKGROUND**

Appellant was charged with two counts of sexual assault and one count of felony assault against a person with whom he had a dating relationship, all second-degree felonies.[1] All three counts alleged separate criminal violations that were said to have taken place during a single incident in Del Rio, Texas, on October 26, 2022. On that date, it is alleged that Navarro beat and strangled his then girlfriend, NQ,[2] during a violent episode in her vehicle, and forced her to engage in sexual acts without her consent.

A jury returned guilty verdicts as to all counts and, after finding the sentences were subject to enhancement,[3] assessed a sentence of thirty years for each count of sexual assault and a sentence of twenty years for the count of felony assault, all to run concurrently. The trial court adopted the jury's verdict and sentence and entered a final order. Appellant filed a motion for new trial asserting ineffective assistance of counsel, which was summarily denied. On appeal, Appellant asserts only that the trial court erred by improperly admitting "crimes, wrongs or other acts" under Texas Rule of Evidence 404.[4]

---

[1] The trial court consolidated the two underlying cause numbers, 2023-0089-CR and 2024-0169-CR, for trial on April 11, 2024. This court consolidated the two causes for appeal on March 19, 2025. Count I in Cause No. 2023-0089-CR alleged that Navarro intentionally, knowingly, or recklessly caused bodily injury to a person with whom the defendant has or has had a dating relationship by intentionally, knowingly, or recklessly impeding the normal breath or circulation of the blood of the person by applying pressure to the person's throat or neck. On August 2, 2024, the State amended Cause No. 2024-0169-CR to reflect two separate counts of alleged sexual assault, one count alleging that he intentionally and knowingly caused the mouth of the complainant to contact or penetrate the sexual organ of the defendant without her consent and one count alleging that he intentionally and knowingly caused the penetration of the complainant's sexual organ without her consent.

[2] To protect the identity of an adult victim of sexual assault, we use the victim's initials. *See* 4th Tex. App. (San Antonio) Loc. R. 4.2

[3] Appellant does not challenge the enhancement of his sentence based on his 2005 felony drug conviction.

[4] We issued a show cause order on October 25, 2024, asking Appellant to demonstrate this court's jurisdiction despite the late filing of a notice of appeal in Appeal Nos. 04-24-00711-CR & 04-24-00712-CR. Although Appellant responded to the show cause order, we note the State does not dispute Appellant timely filed a notice of appeal pursuant to Texas Rule of Appellate Procedure 26.2. Upon our own review of the record, we agree that Appellant sufficiently made known to the trial court his desire to appeal his conviction within thirty days of sentencing. *See Harkcom v. State*, 484 S.W.3d 432 (Tex. Crim. App. 2016).

**FACTS**

NQ testified that she and Navarro had an "on and off" relationship for about three years. She described the relationship as one where Navarro controlled her by threats, intimidation and violence. She testified that he had previously broken her nose and that, almost every other week, he would punch her, slap her, kick her, or call her names. In fact, the argument that occurred on the day in question allegedly began because Navarro wanted NQ to get her gun back from the Del Rio Police Department. The gun had been confiscated by police based on an allegation that Navarro had threatened NQ with it. As a result of the argument, the couple broke up and Navarro left the home. However, later in the night, NQ testified that Navarro began to text her, threatening that, if she did not come see him, he would come to her home and harm her son.

NQ testified she did go see him. During the interaction, he became angry and aggressive and forced her to perform oral sex. He then told her to get in the backseat and take off her clothes. She did so, testifying, "I thought he was going to kill me. I was really scared. So I was just doing what he said." Then, he tried to penetrate her. She testified he then began to hit her head and ears, tried to choke her, and bit her face and cheek. She testified he threatened to kill her and leave her in an empty lot "like the trash that I was." She subsequently lost consciousness and was awoken by Navarro shaking her hair and then pouring a can of beer all over her.

A Del Rio police officer testified that a passerby called the police and reported hearing a woman screaming from a vehicle. When the police officer arrived he saw Navarro embracing NQ, with her "push[ing] away to free herself from his grip or his hold." He stated that NQ had a visible forehead injury and was crying, distraught, and bleeding from her mouth.

That same night, NQ underwent a sexual assault nurse examination (SANE) at Methodist Specialty and Transplant Hospital in San Antonio. The SANE nurse testified NQ presented with

broken fingernails, a tear in the front of her underwear, a scalp contusion, and significant bruising on her face, nose, ears, neck, and underneath her eyes. The SANE nurse testified that the visible markings on her face are indicative of someone who had been strangled. The Texas Department of Public Safety (DPS) Crime Lab supervisor then testified that, upon inspection of the vehicle, blood stains were found on the car door, the sidestep, the steering wheel, the dashboard, the center console, and the window. The inspection also revealed fingernails on the floor, hair on the interior roof and seat, and an earring with blood on it. In addition, the State introduced diagrams and photographs depicting bruising and other injuries to NQ's face, neck, chest, and body, totaling forty-four documented injuries, as well as evidence from the vehicle, including blood stains, damaged property, and NQ's torn undergarments.

Navarro claimed he was sober, asserted NQ was the aggressor, that her injuries were exaggerated, pre-existing, or accidental, and NQ voluntarily removed her clothing and consented to the sexual acts. He further defended himself by contending that he was not violent, was a religious person, and was a changed man from a decade earlier. As part of his case-in-chief, Navarro called his current girlfriend to support these assertions. In response, the State called Navarro's ex-wife who refuted them.

The sole issue on appeal is whether the trial court erred by allowing Navarro's ex-wife to testify about the violence in their nine-year marriage.

### PRESENTATION OF EVIDENCE UNDER TEXAS RULE OF EVIDENCE 404

Prior to trial, the State filed a notice that it intended to introduce extraneous offenses and prior convictions under Texas Rule of Evidence 404(b) and 609, as well as Texas Code of Criminal Procedure articles 37.07 and 38.371. The notice included prior acts of alleged family violence, drug use, and threats made by the defendant. During a pretrial hearing on the day of trial, the trial

court stated it would instruct the jury when it provided the jury charge that, pursuant to Texas Code of Criminal Procedure article 38.371, "other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim" could be offered for the sole purpose of characterizing the relationship between them and, as a result, the state of mind of either Navarro or NQ at the time of the incident. *See Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). Thus, the nature of the extraneous offenses discussed during the pretrial hearing were all incidents which occurred between Navarro and NQ. While stating that such incidents could be presented, the trial court granted Navarro's counsel a running objection "to all of the extraneous." Navarro seeks to rely on that running objection in support of his appeal.

It is true that a continuing or running objection outside the presence of the jury can properly preserve error.[5] *See Lucero v. State*, 709 S.W.3d 739, 744 (Tex. App.—Amarillo 2025, pet. ref'd); *see also* TEX. R. EVID. 103(b); 105(b)(1).[6] But Navarro contends the trial court erred when it permitted the introduction of character testimony from Defendant-Appellant's ex-wife over his objection, citing Rule 404(b) of the Texas Rules of Evidence. This issue has nothing to do with evidence of other incidents between Navarro and NQ.[7] Because the issue on appeal is different

---

[5] We may not reverse a judgment of conviction without first addressing error preservation, regardless of whether it is raised by either party. *Darcy v. State*, 488 S.W.3d 325, 328 (Tex. Crim. App. 2016).

[6] Texas law requires a party to continue to object each time inadmissible evidence is offered unless they obtain a running objection or comply with Rule 103 and secure an objection outside the presence of the jury. *See, e.g.*, TEX. R. EVID. 103(b); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

[7] We note that the evidence concerning Navarro's conduct while married to his ex-wife was not listed on the Notice of Intention to Use Extraneous Offenses and Prior Convictions filed by the State, which was the subject matter of the judge's ruling in limine.

than the issue preserved by Navarro's running objection, that running objection does not preserve error here. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 105(b)(1).

At trial, the State rested without introducing anything other than the kinds of extraneous offenses allowed by the limine instruction, specifically evidence of incidents between Navarro and NQ offered to characterize their relationship and to shed light on the incident in question.[8] *See* TEX. CODE CRIM. PROC. art. 38.371. But after the State rested, Navarro called his current girlfriend, with whom he had been in a relationship for a year and a half, during his case-in-chief. She testified she had never known Navarro to be violent, had only known him to be religious, and that he had never treated her like an object or required her to be subservient to him. *See* TEX. R. EVID. 404(a) ("In a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it."). She testified that Navarro is not the same man he was ten years ago. Further, she questioned whether NQ is really scared of him.

The State then, in rebuttal, called Navarro's ex-wife. Before she testified, Navarro's counsel objected that the ex-wife "has nothing to do with this case," that she would be testifying to extraneous offenses, and that they would have to prove any extraneous offense beyond a reasonable doubt. The trial court pointed out that Navarro had opened the door by bringing his current girlfriend as a character witness to say he was not violent. Then, when ruling that the ex-wife could testify, the trial court stated "what's good for the goose is good for the gander."

---

[8] And in its jury charge, the trial court explained "Evidence of any other alleged acts of misconduct by the defendant against the complainant in this case is not to be considered unless you believe those acts, if any, were committed beyond a reasonable doubt. With regard to those other acts, if any, you are instructed that said evidence was admitted, if it was, only for the purpose of showing the state of mind of the defendant and the complainant and the previous and subsequent relationship between the defendant and the complainant, if it does and for no other purpose."

In testimony that lasted only minutes, Navarro's ex-wife stated that he was violent throughout their nine years of marriage and often punched and slapped her. And, on cross-examination, Navarro solicited testimony regarding police reports that had been filed by the ex-wife about Navarro's violence. Even so, Navarro's objection to the court outside the jury's presence preserves error as to the admission of the ex-wife's testimony. *See* TEX. R. EVID. 103(b); *Lucero*, 709 S.W.3d at 744; *see also Rodriguez v. State*, 274 S.W.3d 760 (Tex. App.—San Antonio 2008, no pet.) (defendant does not waive prior objection to testimony by cross examining witness about direct testimony).

At that point, the State closed and Navarro then decided to testify in support of his own defense, specifically addressing his prior marriage and his ex-wife's testimony. He stated that he was never violent and had never hit his ex-wife. Navarro also reiterated what his girlfriend stated, that he is a changed man and has moved on from his past. And, as for the incident in question, he testified NQ was the aggressor and that her injuries occurred because he was trying to push her away so that he could leave.

## STANDARD OF REVIEW

We review the trial court's decision to admit evidence under an abuse of discretion standard of review. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). In doing so, we will affirm the trial court's ruling unless it is outside the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)). We will find an abuse of discretion only when it is evident from the record that the trial court acted without reference to guiding rules and principles or acted arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

**APPLICABLE LAW**

The Texas Rules of Evidence prohibit the admission of "[e]vidence of a crime, wrong, or other act. . .to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But, such evidence may be admitted "if it is logically relevant to prove some other fact." *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). For example, under Texas Rule of Evidence 404(b)(2), it may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2); *Dabney v. State*, 492 S.W.3d 309, 311 n.2 (Tex. Crim. App. 2017). Further, while evidence of a person's character is normally not admissible to prove that on a particular occasion the person acted in accordance with that trait, in a criminal case if the defendant offers evidence of his character, the prosecution may offer evidence to rebut it. TEX. R. EVID. 404(a)(1), 404(a)(2)(A).

**ANALYSIS**

The trial court seemed to indicate that its ruling was based on Texas Rule of Evidence 404(a)(2)(A), specifically referencing the fact that Navarro opened the door to his ex-wife's testimony by having his current girlfriend testify as to his character as a romantic partner. *See Daggett v. State*, 187 S.W.3d 444, 452–53 (Tex. Crim. App. 2005). But, while it is true that a defendant can open the door to rebuttal character evidence offered by the State, to clear up what it contends is a "false impression" left by a witness, "[t]he evidentiary caveat [to that rule] . . . is that the opponent must correct the 'false impression' through cross-examination of the witness who left the false impression, *not* by calling other witnesses to correct that false impression." *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002); *see, e.g.*, *Daggett*, 187 S.W.3d at 453 & n.19; *Clay v. State*, 390 S.W.3d 1, 14 (Tex. App.—Texarkana 2012, pet. ref'd).

We, however, will uphold a trial court's ruling regarding the admission of evidence if it is correct on any theory of law supported by the record. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016). Here, Navarro contended in his defense that NQ's injuries were not the result of intentional violence but resulted from him simply trying to push her away. By doing so, the State was then permitted to present evidence he had engaged in a history of similar acts of violence with other romantic partners and it was therefore admissible to show Navarro's actions at issue were no accident. *See* TEX. R. EVID. 404(b)(2); *see also Johnston*, 145 S.W.3d at 222. *Wheeler*, 67 S.W.3d at 885–88 (holding evidence not appropriately offered by separate witness under Rule 404(a)(2)(A) was relevant and admissible to rebut defensive theory raised by defendant); *Redmond v. State*, 629 S.W.3d 534, 543 (Tex. App.—Fort Worth 2021, pet. ref'd). In *Redmond v. State*, the court affirmed the trial court's admission of the testimony of another abused romantic partner when the defendant contended the alleged assault of the victim was an accident. 629 S.W.3d at 543–44 (citing *De La Paz*, 279 S.W.3d at 347–48). The court explained "evidence that a defendant previously committed a similar extraneous offense may be offered to prove the intentional nature of the defendant's conduct in the face of a defensive theory that the charged offense was an unintentional accident." *Id.* at 543. Here, such evidence serves "to reduce the possibility that the act in question was done with innocent intent" and directly addresses Navarro's asserted defenses. *Id.* at 544 (quoting *Hung Phuoc Le v. State*, 479 S.W.3d 462, 470-71 (Tex. App.—Houston [14th Dist.] 2015, no pet.)) (internal quotation marks omitted); *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (concluding trial court did not abuse its discretion by admitting extraneous-offense evidence to rebut defensive theories).[9]

---

[9] Navarro also asserted he had moved on from his past behavior. Without the State's introduction of evidence of Navarro's past actions, it would be hard for any juror to determine the credibility of his statements that he's a changed man. *See* TEX. R. EVID. 404(a)(2)(A).

Accordingly, we hold the trial court's decision to allow the testimony of Navarro's ex-wife was within the zone of reasonable disagreement and does not constitute an abuse of discretion.[10]

**HARM ANALYSIS**

Even assuming error was found, it is clear the trial court's admission of the ex-wife's testimony would not warrant a reversal. Under Rule 44.2 of the Texas Rules of Appellate Procedure, any nonconstitutional error that does not affect substantial rights must be disregarded if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect. TEX. R. APP. P. 44.2(b); *Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022).

Here, the ex-wife did not testify more than a few minutes. Given its relatively minor role in the trial, it is no surprise neither attorney dwelled on the evidence in closing argument. And, the evidence otherwise, as detailed above, is of a nature that overwhelmingly supports the jury verdict. *See Westbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) ("While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error."); *see, e.g.*, *Tollett v. State*, 422 S.W.3d 886, 895 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Finally, there was ample evidence presented to the jury about the history and character of the relationship between Navarro and NQ, specifically of control, threats, and violence, all of which was properly admitted per Texas Code of Criminal Procedure article 38.371. Moreover, the jury charge explained any extraneous

---

[10] Navarro also argues on appeal the evidence is inadmissible as unduly prejudicial, citing Texas Rule of Evidence 403. TEX. R. EVID. 403. But Navarro did not preserve this point of error for appellate review because at trial, he failed to lodge a Rule 403 objection to the testimony at issue. *See, e.g.*, *Solis v. State*, No. AP-77,109, ____ S.W.3d____, 2025 WL 3029290, at *12 (Tex. Crim. App. Oct. 30, 2025); *Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004).

offense evidence was not to be considered by the jury unless the jury concluded Navarro committed the extraneous offense beyond a reasonable doubt.

## CONCLUSION

We affirm the judgments of the trial court.

Lori Massey Brissette, Justice

DO NOT PUBLISH